FILED
2026 Apr-01  PM 03:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHWESTERN DIVISION**

|  |  |  |
|---|---|---|
| SARAH CLARK, | ) | Case No.: 3:26-CV-00406-HNJ |
|  | ) |  |
| *Plaintiff,* | ) |  |
|  | ) | **OPPOSED** |
| v. | ) |  |
|  | ) | **ORAL ARGUMENT REQUESTED** |
| FISH BEAR STUDIO LTD., | ) |  |
|  | ) |  |
| *Defendant.* | ) |  |
|  | ) |  |

**DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Pursuant to 9 U.S.C. §§ 201–208 (the "Convention Act") and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), Defendant Fish Bear Studio Limited moves to compel Plaintiff Sarah Clark to submit her claim to binding, individual arbitration and to stay this action pending the resolution of the dispute in arbitration.

**INTRODUCTION**

When customers create an account on Defendant's free-to-play online social gaming platform, they agree to arbitrate any disputes relating to the platform on an individual basis. Plaintiff is no exception. Nevertheless, despite agreeing to arbitrate her disputes with Defendant as recently as the day she filed this putative class action,

1

Plaintiff now seeks not only to recover the $15 she spent on one of Defendant's platform, but also to represent a class of Defendant's Alabama customers.

The Court should reject Plaintiff's attempt to evade her agreement with Defendant. Federal law requires nothing less. Because the parties agreed to arbitrate not only the merits of Plaintiff's claim, but all questions of arbitrability, and Defendant is a Hong Kong limited company, the Convention and the Convention Act require the Court to enforce the parties' agreement.

## BACKGROUND AND PROCEDURAL HISTORY

Defendant operates a free-to-play online social gaming platform, Texas Poker Club. (Declaration of Xiao Liu ("Liu Decl.") ¶ 6.). Only customers who create an account may access and play the games on the platform. (*Id.* ¶ 11.)

To create an account, an individual must complete an online enrollment process. During that process, customers must accept the platform's Terms & Conditions ("Terms") and Privacy Policy through a clickwrap agreement. (*Id.* ¶¶ 11–15.) During the account-creation process, a new user must check a box confirming that he or she agreed to the platform's Terms and Privacy Policy. (*Id.* ¶ 14, Ex. A.) The Terms and Privacy Policy were made immediately available to the user through a hyperlink. If a user failed to check the box confirming that he or she agreed to the Terms and Privacy Policy, the platform would not allow the individual to proceed

further in the account-creation process. (*Id.*) Users who do not affirmatively accept the Terms are not permitted to access or play the platform's games. (*Id.* ¶ 13.)

Plaintiff alleges that she spent money to play games on Defendant's platform within the six months preceding the filing of this Complaint. (Compl. ¶ 15.) She does not identify the platform on which she played the games nor the amount of money she spent. (*See generally* Compl.) However, according to Defendant's user account records, she in fact created two accounts on the Texas Poker Club platform, violating the platform's Terms. (*See* Liu Decl., Ex. B, § 4.2–.3.) She created her first account on December 17, 2025 and her second account on January 6, 2026, the day she filed her complaint. (*See* Liu Decl. ¶ 10.) Plaintiff's total purchases across both accounts equal approximately $15.00. (*Id.*)

The day Plaintiff created her second account, she filed this putative class action. In her complaint, Plaintiff alleges that Defendant's platform violates Alabama gambling law. (Compl. ¶¶ 13–16.) Plaintiff further alleges that, as a result, Alabama Code 8-1-150(a) permits her and a class of Alabama residents to recover "the net amount of the sum paid through purchases of virtual currency" on Defendant's platform from July 6, 2025 to January 6, 2026. (*Id.* ¶ 32.)

Plaintiff and Defendant agreed, however, that they would resolve all disputes related to the platform through binding, individual arbitration. Under the heading

"**IMPORTANT NOTICES,**" the Terms alert users to the arbitration agreement and their right to opt out:

> THIS AGREEMENT INCLUDES AN ARBITRATION PROVISION WHICH SETS FORTH HOW PAST, PENDING OR FUTURE DISPUTES BETWEEN YOU AND Fish Bear SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION ON AN INDIVIDUAL BASIS ONLY AND FOR YOUR OWN LOSSES ONLY.
>
> UNDER THIS AGREEMENT, SUBJECT TO APPLICABLE LAW, YOU MAY NOT PROCEED AS A CLASS REPRESENTATIVE, AS A MEMBER OR PART OF ANY PROPOSED CLASS, COLLECTIVE ACTION OR MASS ARBITRATION . . . .

(Terms § 17.)

> Under the arbitration agreement, customers agree to arbitrate:
>
> any past, pending, or future dispute, claim or controversy arising out of or relating to any purchase or transaction by you, your access to or use of any Platform or the Service, or to this Agreement, the Terms of Services, or Privacy Policy . . . (a "Dispute"), shall be determined by arbitration, including claims that arose before acceptance of any version of this Agreement.

(*Id.* § 17.2.) "Service" is broadly defined to encompass "the platform called "Texas Poker Club" . . . and any related applications (the "Site") as well as Your creation of Your Fish Bear user account ("User Account"), use of the freemium games ("Games") on the Site, and any transactions or dealings with Us in any way." (Terms at 1.)

Further, the parties agreed to "delegate to the arbitrator the exclusive jurisdiction to rule on their own jurisdiction . . . including any objections with respect to" "scope, validity, enforceability, or severability," "as well as the arbitrability of

any claims . . . ." (*Id.*) The agreement calls for arbitration to be administered by JAMS under its Comprehensive Rules. (*See id.* § 17.9; *see also* Liu Decl., Ex. C ("JAMS Rules").)

Plaintiff could have opted out of this agreement. As the arbitration agreement makes clear, users may opt out by sending written notice to Defendant by email within thirty days of entering into the agreement. (Terms § 17.13.) Defendant encourages its customers to carefully consider the decision to agree to arbitrate and to consult with counsel. (*Id.* § 17.14.) Defendant has no record of receiving an opt-out notice from Plaintiff, and the time for her to opt out has expired. (Liu Decl. ¶ 22.)

## LEGAL STANDARD

The Federal Arbitration Act makes arbitration clauses in contracts "evidencing a transaction involving commerce . . . valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2; *Title Max of Birmingham, Inc. v. Edwards*, 973 So. 2d 1050, 1053 (Ala. 2007) (noting that the FAA preempts Alabama law making pre-dispute arbitration agreements unenforceable). The FAA embodies a federal policy favoring arbitration, a policy that applies with "special force" where a party seeks to compel arbitration under the Convention on the Recognition of and Enforcement of Foreign Arbitral Awards (the "Convention"), as implemented by 9 U.S.C. §§ 201–

208 (the "Convention Act"). *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

The Convention requires courts in signatory countries like the United States to, "at the request of one the parties, refer the parties to arbitration. . . . ." Convention, art. II(3), 21 U.S.T. 2517, *entered into force* Dec. 29, 1970, 1970 WL 104417. When a party seeks to compel arbitration under the Convention, courts conduct a "very limited inquiry" into whether the Convention applies. *See Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005). In conducting this inquiry, courts determine whether: (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in a signatory country; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen or the commercial relationship has some reasonable relation with one or more foreign states. *Bautista*, 396 F.3d at 1294 n.7 (11th Cir. 2005). If the answer to all four questions is yes, the court must compel arbitration unless it finds that the arbitration agreement is "null and void, inoperative or incapable of being performed." *Xcoal Energy & Res. v. Acciairie D'italia S.P.A.*, No. 1:23-cv-361-TFM-C, 2025 WL 945604, at *6 (S.D. Ala. Feb. 7, 2025); *see Bautista*, 396 F.3d at 1296, n.9 (citing Convention, art. II).

## <u>ARGUMENT</u>

**I.  The arbitration agreement is valid and enforceable under the Convention and the Convention Act.**

The Convention and Convention Act govern the arbitration agreement because the Terms are an agreement in writing within the meaning of the Convention, the arbitration agreement provides for arbitration in a signatory country, the United States, the arbitration agreement arises out of a commercial legal relationship, and a party to the agreement, Defendant, is not a citizen of the United States.

### A. Plaintiff is bound by a written, mandatory arbitration agreement that provides for arbitration in a signatory country.

Starting with the first two requirements, the Terms and arbitration agreement are written agreements between Defendant and its customers, and provide for arbitration in a signatory to the Convention, the United States. Courts apply ordinary state-law principles to determine whether the parties formed an agreement, but in doing so, must still "take[] into account" the "federal policy favoring arbitration." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005); *see also Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76 (1989)). Under Alabama law, a contract requires an offer and an acceptance, consideration, and mutual assent to the contract's terms. *Ex Parte Riverfront, LLC*, 129 So.3d 1008, 1013 (Ala. 2013). Each element is present here.

7

Defendant's offer is straightforward: it disclaims its right to pursue litigation in exchange for its customers' promise to do the same. When a customer creates an account, the customer must take two affirmative steps to indicate that she accepted the offer. First, the customer must check a box confirming acceptance. *See Ex parte The HuffingtonPost.com, Inc.*, 376 So.3d 432, 449 (Ala. 2022) (recognizing the enforceability of online terms and conditions when website visitor clicked a "pop up" box indicating that she had read and assented to the agreement). Second, and only after the customer checks the box, she may proceed to create an account, which requires the customer to accept the arbitration agreement subject to the right to opt out within thirty days. *See id.* The process by which customers accept the Terms therefore reflects the elements of offer and acceptance. *See id.*

The arbitration agreement is also supported by consideration. Consideration may take the form of an act, forbearance, detriment, "destruction of a legal right, or a return promise, bargained for and given in exchange for the promise." *Family Sec. Credit Union v. Etheredge*, 238 So. 3d 35, 40 (Ala. 2017). Forfeiting the right to a jury trial by agreeing to pursue arbitration is adequate consideration to support an agreement to arbitrate. *See Ex Parte Bill Heard Chevrolet, Inc.,* 927 So.2d 792, 802 (Ala. 2005). Because both customers and Defendant agree to resolve disputes in arbitration, forgoing their right to a jury trial, (Terms §§ 17, 18), the arbitration agreement is supported by adequate consideration. *Id.*

8

Finally, because customers must accept the Terms and the arbitration agreement within them when they created a platform account, mutual assent exists between the parties. While mutual assent is typically manifested by signature, it may also be "inferred from other external and objective manifestations of mutual assent." *I.C.E. Contractors, Inc. v. Martin & Cobey Constr. Co.*, 58 So. 3d 723, 725–26 (Ala. 2010). When customers create an account, the platform alerts them to the existence of the Terms and provides a link that, if clicked, would display the Terms in their entirety. (Liu Decl., Ex. A.) Whether a customer takes the opportunity to read the Terms or not, they manifest assent by checking the box indicating that they accepted the Terms and creating an account. *I.C.E. Contractors*, 58 So. 3d at 725–26; *see Humphrey v. Equifax Information Servs., LLC*, 2024 WL 5247164, at *3–4 (N.D. Ala. Dec. 30, 2024) (enforcing arbitration agreement where arbitration agreement accessible by hyperlink along with other terms of use).

Not only that, Defendant offers customers the opportunity to opt out of the arbitration agreement—an opportunity Plaintiff has chosen to forgo. While an arbitration agreement need not contain an opt-out provision to be valid under Alabama law, Plaintiff's decision not to opt out further signals her "ratification" of the arbitration agreement. *Carusone v. Nintendo of Am.*, No. 5:19-cv-01183-LCB, 2020 WL 3545468, at *5 (N.D. Ala. Jun. 30, 2020). Plaintiff further manifested her assent by continuing to access the platform up until the day she filed her Complaint.

*Lyles v. Pioneer Hous. Sys., Inc.*, 858 So. 2d 226, 229 (Ala. 2003) ("[A]ssent . . .

may be manifested when [the party] accepts the benefits of a contract.").

### B. The arbitration agreement arises out of a commercial legal relationship and one of the parties to the agreement is a foreign citizen.

Next, the arbitration agreement arises out of a commercial legal relationship.

Under the Convention, "commercial" relationships include those "contracts

evidencing a transaction involving commerce" within the scope of section 2 of the

FAA. *See* 9 U.S.C. § 202. Courts must interpret the phrase "involving commerce"

broadly. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). The phrase

"involving commerce" is the "functional equivalent of the more familiar term

'affecting commerce' – words of art that ordinarily signal the broadest permissible

exercise of Congress' Commerce Clause power." *Id.* (citation omitted). The FAA and

the Convention Act therefore apply to contracts that would, "in the aggregate," have

a "substantial effect on interstate commerce." *Id.* at 56–57.

Here, Plaintiff accessed an online service provided by and made purchases

from the Texas Poker Club platform, which is operated by Defendant, a company

incorporated and headquartered in Hong Kong. (*See* Liu Decl. ¶¶ 5–6.) The Terms

govern customers' access to Defendants' social gaming services and their purchases.

(*See generally* Terms.) Thus, the parties' legal relationship has a connection to

commerce for the purposes of the FAA and the Convention Act. *See McKay Bldg.*

10

*Co., Inc. v. Juliano*, 949 So. 2d 882, 885–86 (Ala. 2006) (transaction involved commerce where party did business outside of Alabama); *Spears v. Bay Inn & Suites Foley, LLC*, No. 1:19-00269-C, 2021 WL 2445889, at \*4 (S.D. Ala. Jun. 15, 2021) (recognizing internet as instrumentality of interstate commerce).

Finally*,* because Defendant is a Hong Kong limited company with its principal place of business in Hong Kong, one of the parties to the arbitration agreement, Defendant, is a foreign citizen. 9 U.S.C. § 202; *see Marubeni Corp. v. Mobile Bay Wood Chip Ctr.*, No. Civ. A. 02-0914-PL, 2003 WL 22466215, at \*9 (S.D. Ala. Jun. 16, 2003) (Convention governs where party to arbitration agreement was a non-U.S. company with a non-U.S. principal place of business).

## II.     The Court must compel Plaintiff to submit her claim to arbitration.

Because the Convention's jurisdictional prerequisites are satisfied, the Court must enforce the arbitration agreement under the Convention and the Convention Act. Neither Plaintiff's allegation that the Terms are invalid as a gambling contract nor any other challenge to the agreement permits the Court to do otherwise.

### A. The parties agreed to delegate all arbitrability, enforceability, and scope disputes to the arbitrator.

Along with agreeing to arbitrate the merits of their disputes, the parties also agreed that the arbitrator—not the Court—would decide threshold issues of arbitrability. The Court must therefore refer any arbitrability, enforceability, or scope challenge to the arbitrator.

11

Courts generally decide "threshold issues" of arbitrability unless the parties have "clearly and unmistakably agreed to delegate questions of arbitrability to the arbitrator." *Attix v. Carrington Mtg. Servs., LLC*, 35 F.4th 1284, 1296 (11th Cir. 2022) (quoting *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 70–71 (2019)). The parties may demonstrate their clear and unmistakable intent to delegate questions of arbitrability by including an express delegation clause, *see id.*, or by incorporating rules that give the arbitrator power to decide such questions, *see JPay, Inc. v. Kobel*, 904 F.3d 923, 927 (11th Cir. 2018).

Here, the parties have done both. First, the parties agreed delegate to the arbitrator "the exclusive jurisdiction to rule on their own jurisdiction . . . including any objections with respect to" "scope, validity, enforceability, or severability," "as well as the arbitrability of any claims. *See Johnston v. VGW Holdings Ltd.*, No. 3:25-cv-653-RAH, 2026 WL 699708, at *3 (M.D. Ala. Mar. 12, 2026) (concluding that similar language constitutes the "typical type of delegation language regularly enforced by courts"). Second, the parties agreed to arbitrate in accordance with the JAMS Comprehensive Rules, which grant the arbitrator authority to resolve "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought." (JAMS Rule 11(b).) This too confirms that the parties intended to

12

delegate questions of arbitrability to the arbitrator. *See Johnson*, 2026 WL 699708, at *3–4 (citing *JPay, Inc.*, 904 F.3d at 937).

Because the parties clearly and unmistakably delegated questions of arbitrability to the arbitrator, the Court must respect that decision and refer any arbitrability challenge to arbitration.

### B. The Court would be required to compel arbitration even if the parties had not agreed to delegate enforceability and scope disputes to the arbitrator.

Even if the parties had not clearly and unmistakably delegated issues of enforceability and scope to the arbitrator, the Court would still be required to compel Plaintiff to arbitrate because the arbitration agreement is valid and enforceable under the Convention and it encompasses Plaintiff's claim.

Because the Convention governs the arbitration agreement, the Court must enforce it unless one of the limited defenses available under the Convention applies. The Court may only decline to enforce the arbitration agreement if it is "null and void, inoperative or incapable of being performed." *Bautista*, 396 F.3d at 1296, n.9. As used in the Convention, the phrase "null and void" refers only to those situations that can be applied neutrally on an international scale, such as fraud, mistake, duress, and waiver. *See id.* at 1302 (citing *DiMercurio v. Sphere Drake Ins. PLC*, 202 F.3d 71, 79 (1st Cir. 2000)). Unconscionability is not a defense under the Convention. *See Found. Church Inc. v. Indep. Specialty Ins. Co.*, No. 8:23-CV-2847-CEH-JSS, 2024

13

WL 1579796, at *4 (M.D. Fla. Apr. 11, 2024). Nor is state gambling law. *See Ambrosia v. Blazesoft Limited*, No. 25 C 1723, 2025 WL 2976477, at *4 (N.D. Ill. Oct. 21, 2025).

But even if it were, Plaintiff's allegation that the arbitration agreement is void as a gambling contract would fail because it is incompatible with Supreme Court precedent and the federal law of arbitrability under the FAA. Specifically, the Supreme Court's decision in *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440 (2006) requires the Court to enforce the arbitration agreement. As *Buckeye* made clear, under the FAA, "attacks on the validity of [a] contract, as distinct from attacks on the validity of the arbitration clause itself, are to be resolved 'by the arbitrator in the first instance.'" *Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 20–21; *see Buckeye*, 546 U.S. at 445–46 ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.") Accordingly, courts routinely apply *Buckeye* to reject attempts to avoid arbitration by arguing that the agreement is part of allegedly unlawful gambling contracts. *See e.g.*, *Hall v. Sweepsteakes Limited*, No. 3:25-cv-345-RAH, 2026 WL 701560, at *4 (M.D. Ala. Mar. 12, 2026); *Huynh v. Boom Shakalaka, Inc.*, No. 2:25-cv-5121-HDV, 2026 WL 247880, at *4–5 (C.D. Cal. Jan. 28, 2026); *M.M. v. VGW US, Inc.*, No. 25-cv-10514-DJC, 2026 WL 34452, at *6 (D. Mass. Jan. 6, 2026).

Plaintiff's challenge would still fail even if she were to directly challenge the arbitration agreement and delegation clause. As an Alabama district court recently recognized, arbitration agreements and delegation provisions like those here are supported by valid consideration "separate and apart from the remainder of the agreement": the mutual promises to arbitrate disputes and delegate certain issues to the arbitrator. *Hall*, 2026 WL 701560, at *4, *4 n.3. Plaintiff's gambling contract challenge therefore cannot invalidate the arbitration agreement and delegation clause.

**III.   The Court should stay proceedings pending the outcome of arbitration.**

Because Plaintiff's claim must be resolved in binding, individual arbitration, the Court should stay this action. Under the FAA, the Court "shall on application of one of the parties stay the trial of the action until [the] arbitration has concluded." 9 U.S.C. § 3. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *see also* 9 U.S.C. § 208 (FAA applies to proceedings under the Convention Act to the extent they do not conflict). Defendant therefore respectfully requests that the Court stay all proceedings in this action pending the outcome of arbitration.

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendant respectfully requests that the Court compel arbitration of Plaintiff's claim and stay this action pending resolution of the dispute in arbitration.

15

Dated: April 1, 2026

Respectfully submitted,

*/s/Robert W. Ward*

**BURR & FORMAN LLP**

Gerald P. Gillespy (GILLG3726)
420 North 20th Street
Suite 3400
Birmingham, AL 35203
Tel: (205) 251-3000
Fax: (205) 458-5100
Email: ggillespy@burr.com

**IFRAH PLLC**

A. Jeff Ifrah (*pro hac vice*)
jeff@ifrahlaw.com
Robert W. Ward (*pro hac vice*)
rward@ifrahlaw.com
1717 Pennsylvania Ave. NW, Suite 650
Washington, D.C. 20006
Tel: (202) 524-4140
Fax: (202) 524-4141

*Counsel for Defendant*

16

## <u>CERTIFICATE OF SERVICE</u>

I, Robert W. Ward, hereby certify that on this 1st day of April, 2026, I caused the Defendant's Motion to Compel Arbitration and Declaration in Support to be filed via the Court's electronic filing system, which will transmit a notice of electronic filing to all counsel of record.

<u>*/s/Robert W. Ward*</u>
Robert W. Ward