FILED
2026 Apr-01  PM 03:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| SARAH CLARK, | ) ) ) | |
| *Plaintiff,* | ) ) | Case No.: 3:26-CV-00406-HNJ |
| v. | ) ) ) | |
| FISH BEAR STUDIO LTD., | ) ) ) | |
| *Defendant.* | ) | |

### DECLARATION OF XIAO LIU

I, Xiao Liu, declare and state as follows:

1.      I am employed as director of Fish Bear Studio Ltd., the Defendant in the above-captioned action.

2.      As director, I am familiar with the operations, business books and records of Fish Bear Studio Ltd. ("Fish Bear").

3.      I make this affidavit based on personal knowledge, records maintained in the ordinary course of business, and information reported to me in the ordinary course of business by individuals with a business duty to accurately report that information.

4.      I am over the age of eighteen (18) and competent to testify. If called upon to do so, I could and would testify competently to the matters stated herein.

5.      Fish Bear is a Hong Kong limited company with its principal place of business in Hong Kong.

6.      Fish Bear owns and operates free-to-play online social gaming platforms, Sorcery Reels and Texas Poker Club (the "Platform").

1

7. I understand that on January 6, 2026, Sarah Clark initiated this action against Fish Bear by filing a Complaint in the Circuit Court of Franklin County, Alabama, Case No. 33-CV-2026-900027.00, seeking to recover certain sums she allegedly paid to Defendant through its Platform.

8. I have reviewed the Complaint filed by Plaintiff in this action.

9. Only registered users may play the Platform's social games.

10. Plaintiff created two Platform accounts. One on December 17, 2025, and one on January 6, 2026. She last accessed both accounts on January 6, 2026. The period during which Plaintiff maintained an active Platform account is referred to in this Declaration as the "Relevant Time Period."

11. During the Relevant Time Period, no Platform user could play any of the games, make any purchase, or redeem any prizes on the Platform, unless he or she created a user account.

12. To create an account, a new user was required to provide his or her name, email address, birth date, and primary address, and to agree to the Platform's Terms of Service ("Terms") and Privacy Policy. The Platform would then assign the user's account a unique user identification (or player) number. To authenticate the identity of the individual establishing the account, an email would be sent to the email address provided during the account-creation process. New users were required to open that email and enter the one-time verification code received in the email into the account registration page on their device to authenticate their identity and activate the account.

13. To create an account on the Platform, each user was required to check a box confirming that he or she agreed to the Platform's Terms and Privacy Policy. The Terms

2

and Privacy Policy were made immediately available to the user through a hyperlink. If a user failed to check the box confirming that he or she agreed to the Terms and Privacy Policy, the Platform would not allow the individual to proceed further in the account-creation process.

14.    Attached hereto as **Exhibit A** is an image that truly and accurately depicts the process by which each of the Company's customers created an account and agreed to the Platform's Terms during the Relevant Time Period.

15.    Attached hereto as **Exhibit B** is a true and accurate copy of the Platform's Terms as currently in effect.

16.    Under the Platform's Terms, users agree to submit all past, pending, or future disputes between them and Fish Bear arising out of, or relating to, any purchase or transaction by the user, or arising out of the Platform's Terms and the Arbitration Agreement contained within the Terms, to binding, individual arbitration.

17.    Users also agree that any dispute concerning the breach, enforcement, construction, validity, interpretation, enforceability, or arbitrability of the Terms and the Arbitration Agreement contained within the Terms will be resolved by arbitration.

18.    The Arbitration Agreement calls for arbitration administered by JAMS under its Comprehensive Arbitration Rules and Procedures ("JAMS Rules") in effect at the time arbitration is sought and, to the extent applicable, the JAMS Mass Arbitration Procedures and Guidelines.

19.    Attached hereto as **Exhibit C** is a true and accurate copy of the JAMS Comprehensive Rules as currently in effect.

20.    Plaintiff could not have created either of her two accounts, played any

games, or made purchases on the Platform without creating an account through the process described above in paragraphs 13–15.

21.     Platform users may opt out of the Arbitration Agreement by sending written notice to Fish Bear within 30 days of account creation. As of the date of this Declaration, only one user has opted out of the Arbitration Agreement.

22.     I have reviewed Fish Bear's records of customers who have opted out of the arbitration agreement. Fish Bear has no record of Plaintiff ever sending a notice indicating that she wished to opt out of the arbitration agreement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: March 30, 2026          Respectfully submitted,

*Xiao Liu*